IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

J.D. HEISKELL HOLDINGS, LLC d/b/a
J.D. HEISKELL & COMPANY,

    Plaintiff,

v.                                                                                                  Civ. No. 23-854 JCH/JFR

WILLARD DAIRY, LLC,
VALLEYVIEW DAIRY, LLC, and
TIVERTON ADVISORS, LLC,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendant Tiverton Advisors, LLC's Motion to Dismiss* [Docs. 32 and 33]. Plaintiff has filed a response [Doc. 39], and Tiverton has filed a reply [Doc. 48]. After reviewing the foregoing briefs as well as the relevant legal authorities, the Court concludes that the motion to dismiss should be denied.

## BACKGROUND

According to the allegations of the Amended Complaint, Plaintiff J.D. Heiskell Holdings, LLC ("JDH") sells dairy feed and other agricultural commodities. Amended Complaint, Doc. 24 at ¶¶ 1, 12. Defendants Willard Dairy, LLC ("Willard") and Valleyview Dairy, LLC ("Valleyview"), together the "dairy defendants," both long-term customers of JDH, executed written credit applications and agreements to purchase grains and feed from JDH. *Id.* at ¶¶ 20, 24, and 36. Both companies purchased and paid for agricultural products according to those agreements. In July of 2022, the third Defendant, Tiverton Advisors, LC, ("Tiverton"), entered

into a "refinancing endeavor" with Willard and Valleyview. *Id*. at ¶ 50. The Amended Complaint refers to this agreement as the "Tiverton Deal." *Id.* JDH alleges that after this time, Tiverton took control of deciding which of the dairy defendants' creditors would be paid. *Id*. at ¶ 52, 103. In 2023, both Willard and Valleyview stopped paying their invoices for products provided to them by JDH. Despite JDH's demands for payment, the dairy defendants have not paid for products received. JDH alleges claims for breach of contract (and alternatively, breach of implied contract and unjust enrichment) against Willard and Valleyview, *id*. at ¶¶ 56-99.

With regard to Tiverton, JDH alleges that Tiverton directed the dairy defendants not to pay their outstanding balances owed to JDH. *Id*. at ¶ 104. It further alleges that by refusing to permit Willard and Valleyview to pay their debts to JDH, Tiverton "improperly interfered with the contractual and business relationship between the dairy defendants on one hand, and JDH, on the other." *Id*. at ¶ 55. Similarly, it alleges that despite knowing about the debts owed to JDH, "Tiverton improperly interfered with JDH's rights under the Willard and Valleyview Agreements." *Id*. at ¶ 105. Thus, JDH's seventh cause of action is one against Tiverton for tortious interference with contractual and business relations. *Id*. at ¶¶ 100-107.

## **DISCUSSION**

### I.     The Parties' Arguments

Tiverton argues that JDH's claim for tortious interference with contract should be dismissed because it failed to properly allege the fifth element of the claim, that Tiverton acted without justification or privilege in refusing to allow Willard and Valleyview to pay money owed to JDH for goods received as required under their contract.  Tiverton points out that the Amended Complaint does not specifically aver that it acted "without justification or privilege" in refusing to allow payment with improper motive or by improper means. Tiverton argues that the facts

2

alleged by JDH actually support the opposite—that Tiverton was justified in refusing to allow Willard and Valleyview to use its money to pay JDH because under the terms of the Tiverton Deal it was a secured lender exercising its contractual rights over its collateral, the money in Willard and Valleyview's bank accounts. In support of its argument, Tiverton attaches to its motion "relevant excerpts" [Doc. 33 at 4] of the "Tiverton Deal." Tiverton contends that the agreement is central to JDH's complaint, so the Court may consider it without converting the motion to dismiss to a motion for summary judgment. Tiverton then argues, with specific references to that agreement, that it was justified in exercising control over Willard and Valleyview's funds and other collateral. Finally, Tiverton argues that JDH should not be permitted to amend its complaint, as doing so would be futile.

In response, JDH argues that it has properly pled its tortious interference claim, noting that although it did not use the words "justification" or "privilege," it did allege that Tiverton "improperly interfered" with JDH's contractual relationship with Willard and Valleyview, and that this is sufficient. It also argues that whether the interference was justified or privileged is not for the plaintiff to prove, but rather falls to the defendant to prove. JDH also asserts that the Tiverton Deal itself may constitute an improper act of interference. However, JDH asserts that the question of whether Tiverton's act was justified or privileged cannot be resolved on a motion to dismiss, but rather is a fact-intensive inquiry more properly decided after discovery. In that vein, JDH contends that the Court should neither consider excerpts to the loan agreement submitted by Tiverton nor convert the motion to one for summary judgment for three reasons: (1) the exhibit is not central to JDH's claim, but rather to Tiverton's defense; (2) JDH did not have notice of the specific contents of the loan agreement before Tiverton filed its response brief; and

3

(3) JDH disputes the authenticity of the exhibit. Finally, JDH contends that amending its complaint would not be futile.

## II.     Consideration of Tiverton's Exhibits

Tiverton asks the Court to consider excerpts from its contracts with the dairy defendants, attached to its motion as Docs. 33-1 and 33-2. When reviewing a motion to dismiss under Rule 12(b)(6), the court generally may not look beyond the four corners of the complaint. *Waller v. City and Cnty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true, and we will not consider evidence or allegations outside the four corners of the complaint in reviewing the district court's Rule 12(b)(6) dismissal." (quotations and citations omitted)). The Tenth Circuit has recognized the following three exceptions to the four corners of the complaint rule: (1) "documents that the complaint incorporates by reference"; (2) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity"; and (3) matters "which a court may take judicial notice." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (internal quotation marks and citations omitted). Otherwise, to consider a matter outside the pleadings, the court must convert the Rule 12(b)(6) motion into one for summary judgment under Rule 56. Fed. R. Civ. Pro. 12(d).

Tiverton argues that the Tiverton Deal documents satisfy the second exception, asserting the deal is referred to in the complaint and the documents are central to JDH's claim. Doc. 33 at 4 n.1. That exception does not apply here for two reasons. First, the documents are not central to JDH's claim, but rather to Tiverton's defense. JDH's interference with contract claim against Tiverton does not arise out of a breach of the contract between Tiverton and the two dairy

defendants, but rather out of the breach of the contracts that JDH had with the dairy defendants. Therefore, the Tiverton Deal contract documents are not central to JDH's claim against Tiverton. Notably, Tiverton asserts that the Tiverton deal documents demonstrate that it was justified and privileged to prevent the dairy defendants from paying the money owed to JDH. Therefore, the documents are relevant to Tiverton's defense rather than to Plaintiff's claim. *See Burke v. Holdman*, 750 Fed. Appx. 616, 622-23 (10th Cir. Sept. 13, 2018) (concluding that on a motion to dismiss, district court could not consider contract that was the source of defendant's immunity claim but not plaintiff's negligence claim without converting the motion to summary judgment). Second, the Court declines to apply the exception because the documents' authenticity is not undisputed. JDH asserts, and Tiverton does not dispute, that JDH did not have a copy of the contracts between Tiverton and the dairy defendants until they were attached to Tiverton's motion to dismiss because Tiverton had refused to produce them to JDH in discovery. Furthermore, the documents that Tiverton did attach to its motion were excerpts of the agreements, not the entirety of the documents. As a result, JDH was not on notice of the Tiverton Deal documents, does not have the complete agreements, and does not agree that they are authentic. Therefore, the exception does not apply.

Because there is no applicable exception, the Court will not consider the Tiverton Deal documents and will not convert the motion to one for summary judgment. Rather, the Court will analyze the motion under Rule 12(b)(6) standards set forth below, considering only the four corners of the Amended Complaint.

### III.   Legal Standard on a Motion to Dismiss for Failure to State a Claim

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Determining whether a complaint contains well-pleaded facts sufficient to state a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679 (2009). The standard remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations and citation omitted).

IV.  **Analysis**

Tortious interference with contract is a common law tort claim controlled by state law in New Mexico.[1] The elements of the tort of interference with contractual relations are that (1) the defendant had knowledge of the contract between plaintiff and a third party, (2) performance of

---

[1] This Court sits in diversity jurisdiction, so it must look to the forum state—in this case, New Mexico—for choice-of -law rules to determine which state's substantive law applies. *Pepsi-Cola Bottling Co. of Pittsburg v. PepsiCo., Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). New Mexico applies "the doctrine of lex loci delicti commissi," or the law of the place where the wrong occurred. *Torres v. State*, 119 N.M. 609, 613, 894 P.2d 386, 390 (1995). Here, Willard, Valleyview, and Villalpando are New Mexico limited liability companies with their principal places of business in New Mexico. From the Amended Complaint, it appears that Willard and Valleyview accepted delivery of JDH's products in New Mexico, and then failed to pay monies owed while in New Mexico. Therefore, under the applicable choice-of-law rules, New Mexico law applies to JDH's claim for tortious interference with contract. Based on the briefs, which rely on New Mexico tort law, it appears that the parties agree.

the contract was refused, (3) defendant played an active and substantial part in causing plaintiff to lose the benefits of his contract, (4) damages flowed from the breached contract, and (5) defendant induced the breach "without justification or privilege to do so." *Ettenson v. Burke*, 2001-NMCA-003 at ¶ 14, 130 N.M. 67, 73 (Ct. App. 2000) (citing *Wolf v. Perry*, 65 N.M. 457, 461-62, 339 P.2d 679, 681-82 (1959)). Not every interference leading to a breach of contract amounts to an unlawful act or a civil action; tort liability attaches only when the interference is without "justification or privilege." *Williams v. Ashcraft*, 72 N.M. 120, 121, 381 P.2d 55, 56 (1963). To be held liable for causing one to lose the benefits of a contract, the tortfeasor must act either with an improper motive or by use of improper means. *See Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 20, 125 N.M. 748, 965 P.2d 332.

Tiverton argues that JDH has failed to adequately plead the fifth element of its tortious interference claim—that Tiverton induced the dairy defendants to breach their contracts without justification or privilege to do so. According to Tiverton, JDH's allegations on this element are conclusory and fail to allege adequate facts to support that element. The relevant allegations in the Amended Complaint are:

- "…Tiverton entered into a refinancing endeavor with Willard and Valleyview (the 'Tiverton Deal')." Doc. 24 at ¶ 50.

- "Following the Tiverton Deal, Tiverton took control of deciding which creditors of Willard and Valleyview would be paid." *Id*. at ¶ 52.

- "…Tiverton knew about JDH's contractual and business relationship with Willard and Valleyview." *Id*. at ¶ 102.

- "Simultaneously with the Tiverton Deal, Willard and Valleyview fell behind and ultimately ceased making payments of their respective Outstanding Balances to JDH." *Id*. at ¶ 53.

- "Representatives of Willard and Valleyview acknowledge that they owed Outstanding Balances to JDH and informed Tiverton of this fact. Willard and Valleyview representative requested that Tiverton discuss the Outstanding Balances with JDH so they could be paid." *Id*. at ¶ 54.

- "…Tiverton directed Willard and Valleyview not pay the Outstanding Balances due and owing to JDH." *Id*. at ¶ 104.

- "Tiverton refused to permit payments of the Outstanding Balances to be paid to JDH. Tiverton, therefore, improperly interfered with the contractual and business relationship between Willard and Valleyview, on one hand, and JDH, on the other." *Id*. at ¶ 55.

- "Tiverton improperly interfered with JDH's rights under the Willard and Valleyview Agreements." *Id*. at ¶ 105.

According to Tiverton, these allegations that it acted "improperly" lack the requisite specificity and are too conclusory to survive scrutiny under Rule 12(b)(6). Tiverton also argues that JDH cannot allege that Tiverton acted without justification or privilege because it was acting in accordance with its own contractual rights under the Tiverton Deal. Tiverton correctly notes that under New Mexico law, a party with a contract of its own is privileged to prevent performance of the contract of another which threatens his economic interest. Doc. 33 at 7-8 (citing *Williams v. Ashcraft*, 72 N.M. 120, 122, 1963-NMSC-080, ¶ 5. According to Tiverton, therefore, the mere

8

fact that it too has a contractual relationship with Willard and Valleyview "defeats Plaintiff's claim for tortious interference." Doc. 33 at 10.

The Court disagrees for several reasons. First, it is true that to ultimately *prove* liability for tortious interference with contract a plaintiff must demonstrate that the defendant acted without privilege or justification, but that does not reach the question of what facts a party is required to *plead* at the initial stage of the litigation. The New Mexico state court cases cited by Tiverton all require proof of lack of privilege or justification at the summary judgment and trial stages of a case; they do not state that a plaintiff must allege facts regarding privilege or justification with specificity in the complaint.[2]

Furthermore, the Court is unpersuaded by the federal district court cases (which are not binding authority on this Court) Tiverton cites. For example, in its reply Tiverton leans on a decision from this district, *Firebird Structures, LCC v. United Bhd. Of Carpenters & Joiners of Am., Loc. Union No. 1505*, 252 F. Supp. 3d 1132, 1166 (D.N.M. 2017), to assert that a plaintiff "must also *allege* the defendants acted with either an improper motive or improper means …" Doc. 48 at 7 (emphasis added). The Court is unpersuaded by *Firebird Structures* for two reasons. First, the Court does not believe that assertion in *Firebird Structures* to be an accurate statement of the law. Improper motive and improper means are avenues of *proving* lack of justification or privilege; not pleading requirements. Further, *Firebird Structures* cites *Martin v. Franklin*

---

[2] *See, e.g., Martin v. Franklin Cap. Corp.*, 145 N.M. 179, 2008-NMCA-152, ¶ 7, 15 (listing elements that a plaintiff must prove and stating the plaintiff must bring forth evidence of improper motive to survive summary judgment); *Fikes v. Furst*, 134 N.M. 602, 2003-NMSC-033, ¶ 24-25 (discussing evidence vis-à-vis creation of a genuine issue of material fact on summary judgment); *LensCrafters, Inc. v. Kehoe*, 282 P.3d 758, 2012-NMSC-020, ¶ 41 (same); *Williams v. Ashcraft*, 72 N.M. 120, 1963-NMSC-080 (same); *Wolf v. Perry*, 65 N.M. 457, 461, 1959-NMSC-044 (discussing whether evidence at trial was sufficient to support tortious interference claim); *Ettenson v. Burke*, 2001-NMCA-003 at ¶ 14, 130 N.M. 67, 73 (Ct. App. 2000) (same).

*Capital* on this point, but that case does not support *Firebird Structures'* statement regarding what a plaintiff must plead. As noted above, in the cited passage the *Martin* court was discussing what a plaintiff needed to prove to survive summary judgment, not what it needed to allege to survive a motion to dismiss. *Border Area Mental Health, Inc. v. United Behavioral Health, Inc.*, 331 F. Supp. 3d 1308, 1318 (D.N.M. 2018) is distinguishable on its facts—the complaint in that case contained contradictory allegations undermining plaintiff's assertion that the defendant used improper means. The Court is also not persuaded by *President and Fellows of Harvard College v. Elmore*, 222 F. Supp. 3d 1050 (D.N.M. 2016) because the *Elmore* court did not reach Tiverton's claim that JDF must plead specific facts supporting privilege and justification. *Id*. at 1062-63. *Royal Pac. Ltd. v. Faith Elec. Man. Co.*, 322 F. Supp. 3d 1178 (D.N.M. 2018) involved a claim of interference with prospective contract, a harder claim to plead and prove than interference with existing contract.

Second, particularly where a plaintiff like JDH—still without the benefit of discovery—is at a disadvantage in obtaining the details of the relationship between its contractual partner and the third party it is suing for tortious interference, it is unreasonable to expect that plaintiff always to be in a position to allege specific facts regarding the third party's contractual rights or his motives for acting in a particular way. It is enough at this stage for JDH to allege that Tiverton improperly interfered with its contractual relationship with the dairy defendants; the fact that something is improper means that it is without justification, and therefore JDH's claim is plausible.

Third, whether Tiverton acted in accordance with its rights under the Tiverton Deal is not something that can be resolved on a motion to dismiss, at least under the circumstances of this case. Justification or privilege is most often raised by the defendant as a defense at summary

judgment or at trial, as noted in the cases cited by Tiverton. As the Court has explained, it will not consider the Tiverton Deal documents on this motion to dismiss. Therefore, the question of whether there is a genuine issues of material fact that Tiverton acted justifiably and in accordance with the Tiverton Deal documents is a mixed question of law and fact that should be addressed in a motion for summary judgment after JDH has been given the complete documents and has had an opportunity to conduct discovery. At that point, the Tiverton Deal documents, along with the question of Tiverton's justification or privilege, will be properly before the Court.

Therefore, the Court will deny Tiverton's motion to dismiss.

## V.     Tiverton's Objections to Magistrate Judge's Order

Soon after filing its motion to dismiss, Tiverton filed a motion for protective order [Doc. 43] arguing that the court should stay discovery pending a decision on the motion to dismiss. The magistrate judge entered an order [Doc. 63] denying Tiverton's motion for stay. Two weeks later, Tiverton filed objections [Doc. 65] to the magistrate's order, to which JDH filed a response [Doc. 72]. Now that the Court has ruled on Tiverton's motion to dismiss, Tiverton's objections [Doc. 65] to the magistrate judge's denial of its motion to stay discovery are moot. However, as discussed below the objections also fail on the merits.

When a party objects to a magistrate judge's order, the Court must consider such objections and modify or set aside any portion of the order found to be clearly erroneous or contrary to law. Fed. R. Civ. Pro. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). "The clearly erroneous standard is intended to give the magistrate a free hand in managing discovery issues." R. Marcus & E. Sherman, Complex Litigation at 643 (1985). To be found erroneous, the Court must have a "definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988); *see also Parts & Elec. Motors, Inc. v.*

*Sterling Elec., Inc*., 866 F.2d 228, 233 (7th Cir. 1988) (providing that a decision "must strike us as more than just maybe or probably wrong; it must ... strike us as wrong with the force of a five-week-old, unrefrigerated dead fish").

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co*., 299 U.S. 248, 254–255 (1936) (citation omitted). To accomplish this balance, the magistrate judge considered all five factors in a test often applied by judges in this district: (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

Here, the magistrate judge carefully considered all factors in the five-part balancing test, giving particular thought to the facts of this case. After considering each of these factors in some detail, the magistrate judge balanced the factors and concluded that a stay of discovery was not warranted. In its objections, Tiverton disagrees with the way in which the magistrate judge evaluated and balanced each of the factors. Tiverton then revisits each factor, citing cases with different facts in which other magistrate judges in the District of New Mexico have applied the balancing test and granted a stay of discovery. In this Court's estimation, the cases Tiverton cites merely show that the application of the five-factor case is highly fact-specific, and that good jurists exercising their judgment in good faith can reach different conclusions as to when it is appropriate to impose a stay in cases with different facts. None of Tiverton's arguments or citations to other decisions remotely suggest that the magistrate judge's decision to deny a stay

12

was clearly erroneous, and the Court does not have the firm conviction that the magistrate judge erred. Accordingly, the Court will overrule Tiverton's objections the merits as well.

        **IT IS THEREFORE ORDERED** that:

(1)    *Defendant Tiverton Advisors, LLC's Motion to Dismiss* [Doc. 32] is **DENIED**; and

(2)    *Defendant Tiverton Advisors, LLC's Objections to Magistrate's Decision Denying Motion to Stay Discovery* [Doc. 65] are **OVERRULED**.

                                                      SENIOR UNITED STATES DISTRICT JUDGE